Mr. Justice Colcock
delivered the opinion of the court:
In this case a new trial must be granted, for the verdict is directly contrary to law. It was contended that the jury disbelieved the witnesses, and therefore found for the defendant. But the court will not suppose this possible. The court will not believe that a jury would capriciously exercise the power of determining on evidence. The evidence was all on one side of the case, and the character of the witnesses was not impugned. Nor is there any reason for the eourt to believe that the witnesses were men of bad character. If the fact be so, it was doubtless susceptible of proof, and like every other fact of which a party wishes to avail himself should have been proved ; and if it had been proved, the court might have been induced to believe that the case had been determined on the evidence, and consequently haye suffered the verdict to remain.— But in the discharge of the high and important duties which devolve on juries .of this country, I do not think them authorized to exercise such a power as to determine that a witness is not to be believed, whose .testimony is uncontradicted, and whose character is unimpeached— even if he be a man of suspicious character, if is unjust, both as it regards the witness and the parties :
1st. As to the witness, why shut th,e door pf repentance against any man ? A man may see the error of hi's ways, and wish to return to the path of virtue : he may have erred in some things, and yet be unwilling to make a solemn appeal to his God to witness his infamy ?
2d. As to the parties, if the testimony be contradicted, or the character of the witnesses attacked, other testimo *180 ny might be produced to corroborate that of the witnesses, or to remove the doubts as to the character. Again, a man of bad character ma}*- swear to. the truth, and if there, be nothing extraordinary in the nature of the fact to be proved, why should a jury disbelieve him, if the party against whom he swears, will not be at the trouble of proving his character, or something else which may cause them to doubt the truth of his testimony.
Upon the law, the case admits of no doubt. If the statute could be so easily eluded, it would indeed be a monument of human weakness and folly. The words' of the act are, “ and all bonds, specialties, contracts, promises and assurances whatsoever, for payment of any principal, or money or goods, wares or commodities, as aforesaid, to be lent or covenanted to be performed, upon or for any usury, whereupon or whereby there shall be reserved or taken above the rate of seven pounds in the hundred, as aforesaid, and so according to that 'rate and proportion, if goods, wares, merchandize, and commodities, are lent as aforesaid, shall be utterly void and of none ctrect,” (% Brev. 318.) It would seem on this reading to be only necessary to ask, whether more than seven per cent, interest was reserved by this note ; and if so, in the language of the act, without any reference to parties, to dedare it void. But as it has been contended, that the defendant, (who had indorsed the note before the money was received on it, and was ignorant of the purpose for which it was intended, and consequently not a party to the legal fraud,) cannot avail herself of the protection of the law, it is necessary to consider what was the object and policy of the law, and to refer to adjudged cases. Anciently, the receiving of any interest for the loan of money, was considered among those who called themselves Christians, as á violation, both of the divine and human law. ..And as late as the reign of James 1st. the statute was made to end with a proviso, that no words in the law contained, should be construed or expounded to allow the practice of usury, in point of religion or conscience. But *181 from the reign of Henry, the 8th, in England, and now, throughout the civilized world, interest is allowed. It is nevertheless deemed politic to fix and establish by law the rate of interest. After doing so, it is of importance to prevent avaricious persons from exceeding this established, rate of interest in their contracts, as well as to punish them in the event of their doing so. Of what importance is it then, whether the indorser is ignorant of the usury or not? Is the illegal or corrupt intent the less, because all the persons whose names are on the note, are-not informed of it ? Or is it the less so, because it may pass into the hands of an innocent indorsee ? The law never visits the punishment designed for the guilty on the innocent. The indorsee, who is cheated by the usurer passing to him a note contaminated with usury, and therefore void, may have his action against him and recover. But the note originally contaminated with usury is void, pass where it may. And the books abound with cases in support of this position, and which, in the facts, cannot be distinguished from the ease before us. The case of Jones vs. Hake, (2 Johns. Cas. p. 60,) is of this description. There, as in the case before us, money could not be raised on the note as at first made ; but the broker was told, “ if you will procure the indorsement of Peter JL. Schenck, I will get the money.” The Judge in delivering the opinion of the court, says, “ if we admit no shift or device to elude the statute against usury, and look through the forms under which the parties intended to cover the loan, it appears to me there can be no doubt but that the contract was usurious, and therefore void. In 2 Camp. Pep. p. 599, is another case directly in point. It was an action on a bill of exchange. The drawer, the defendant, was ignorant of the purposes for which it was intended, and therefore stood in the same situation of this defendant who indorsed this note, and who was by this indorsement, the drawer of a bill.
The drawer’s ignorance is immaterial. Had the bill been in existence before the agreement, (he usury between *182 the parties would not have vitiated it in the hands of the plaintiff; but the agreement was the cause of its formation. “ If a bill of exchange must be valid, because the parties to it cannot be proved to have had notice of the occasion for drawing it, and the purposes to which it is to be applied, this would be an easy recipe for evading the statute of usury. And the same doctrine will be found in the opinion of Lord Kenyon, in the case of Cuthbert & Haley. Payne & Trezvant, (2 Bay, 23) Lowe & Waller, (Douglass, 735 :) and in a number of other cases collected in Comyn on Usury, front page 164 to 182, which is concluded with a remarkable case of a bill, good in its origin, or at least so considered in the discussion of the case, but contaminated with usury by the payee passing it for less than its value, being held void as to the innocent indorsee, who was obliged to establish his right of recovery through the indorsement of the payee.
The motion is granted.
Justices Bichardson, Johnson and Colcocle, concurred,